**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| ANDDONE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SHANTE GAINES; RESET FINANCIAL GROUP, LLC,<br><br>Defendants. | ) | Case No. 4:25-cv-00346-RK |

## ORDER

This is a breach of contract action. Before the Court are three motions filed by Plaintiff AndDone, LLC: (1) motion for attorney fees associated with its early efforts to compel discovery pursuant to Rule 37, (Doc. 60); (2) motion for default judgment against pro se Defendant Shante Gaines, (Docs 76; 81 at 6-8); and (3) motion for default judgment against Defendant Reset Financial Group, LLC, (Doc. 81). Only the motion for default judgment against Gaines is fully briefed. (Docs. 82, 83). After careful consideration and for the reasons stated below, the Court **ORDERS** that: (1) AndDone's motion for attorney fees pursuant to Rule 37 is **GRANTED**; (2) AndDone's motion for default judgment as to its breach of contract claim against Gaines is **GRANTED** and the Court enters default judgment against Gaines; and (3) AndDone's motions for default judgment on its alternative claims against Defendant Gaines and Defendant Reset Financial Group are **DENIED as moot**.

### Background

AndDone offers electronic payment processing services to brokers in the insurance industry. Insurance brokers use AndDone's platform to, *inter alia*, collect secure payments through its online platform. At all times relevant to AndDone's allegations, Gaines was an insurance broker licensed in Kentucky.

On April 11, 2024, Gaines and AndDone executed a Sub-Merchant Agreement which established the terms under which AndDone would provide payment processing services to Gaines.[1] (Doc. 55-1.) Under the Sub-Merchant Agreement, Gaines agreed to not "use an account

[1] The Sub-Merchant Agreement refers to the parties to the agreement as AndDone and "the party

number for any purpose other than as payment for [her] goods or services," and that she would "always maintain" an open settlement account with "sufficient cleared funds to meet [her] obligations" to AndDone under the contract. (*Id.* at 3.) Gaines authorized AndDone to debit her bank account "to settle any and all fees and other amounts due [to] AndDone" and she agreed that AndDone would "have the right at any time to charge" her "for any return, [or] chargeback." (*Id.* at 7.) A chargeback occurs when an account holder disputes a transaction with their bank, resulting in a reversal of the payment and a refund to the disputing account holder.

As part of AndDone's payment processing services, AndDone provided Gaines a unique payment portal she could give her customers which they used to pay Gaines for insurance products. On November 22, 2024, Gaines' portal accepted an ACH direct debit for $78,203 from a payor using a PNC Bank account owned by Nola Foster with the last three digits *973. The payor identified themselves as "Nola Foster" and provided the email "nolafoster1951@gmail.com." On November 25, 2024, Gaines' portal accepted an ACH direct debit for $10,303.00 from the same account and credentials. However, Nola Foster died on November 21, 2024, the day before the first transaction. Gaines used Nola Foster's account to initiate the transfers.[2] (*See id.* at ¶ 26; Doc. 6 at ¶¶ 2-3.) These funds were not payments for goods or services provided by Gaines.

Once the funds settled in Gaines' AndDone account, Gaines transferred the funds to her bank account at Navy Federal Credit Union on November 26 and 27, 2024. Then, an account holder on Nola Foster's PNC accounts reported the $78,203 and $10,303 debits as unauthorized transactions, and on December 16, 2024, PNC clawed back the funds from AndDone. There were no funds in Gaines' settlement account with AndDone, and as a result, PNC clawed back $88,506 from AndDone's operating account. AndDone notified Gaines and told her she must reimburse AndDone; however, she refused. Between December 2024 and March 2025, Gaines was represented by counsel, who acknowledged multiple times that Gaines owed AndDone $88,506 for the chargeback and asked how AndDone would like to receive its reimbursement. Gaines never reimbursed AndDone. AndDone twice attempted to debit Gaines' Navy Federal Credit Union

---

named below ('Company')," and is signed by "Shante' Gaines" following the provision: "I acknowledge that I have read the Sub Merchant Agreement above and agree to be bound by its terms; I authorize AndDone, LLC to make any business or personal credit inquiries they consider necessary to review the acceptance and continuation of this Agreement." (Doc. 55-1 at 1, 20-21.)

[2] Gaines has represented to the Court that Nola Foster was her grandmother. (Doc. 6 at ¶ 2.)

account to recoup the funds, as provided for in the Sub-Merchant Agreement. Both transactions (March 26, 2025 for $88,500, and April 9, 2025 for $10,000) failed due to insufficient funds.

On May 8, 2025, AndDone filed its original complaint alleging breach of contract, unjust enrichment, and negligence against Gaines. (Doc. 1.) On July 29, 2025, Senior District Judge Gary A. Fenner ("Initial Court")[3] entered the Scheduling Order which set a November 7, 2025 deadline by which the parties could file discovery motions and a November 21, 2025 deadline for close of all discovery.[4] (Doc. 13). AndDone served its discovery requests on September 16, 2025, meaning Gaines' responses were due October 16, 2025. (Doc. 31; Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), and 36(a)(3).) She did not serve responses.

Gaines did file a motion to dismiss (which was denied) and various other improper filings (which were later struck), claiming, *inter alia*, that she is not personally liable under the Sub-Merchant Agreement, rather, Reset Financial Group, LLC, her limited liability company, is the proper party. (*See, e.g.*, Doc. 19-1.)

On October 20, 2025, AndDone moved for leave to file a second amended complaint seeking to add an alternative breach of contract claim against Reset Financial Group based upon Gaines' representations. (Doc. 34.) Gaines' response deadline was November 3, 2025. (Doc. 34.) Also on October 20, AndDone began attempting to schedule a date to depose Gaines remotely.[5] (Doc. 36-2.)

On October 21, 2025, five days after Gaines' written discovery responses were due, Gaines moved for an extension of time to respond to AndDone's motion for leave and to provide discovery requests. (Doc. 35.) Gaines insisted that written discovery was improper before AndDone's motion for leave to amend was resolved, and she requested fourteen days from the Initial Court's ruling on AndDone's motion for leave to amend the complaint to serve her discovery responses. In AndDone's response in opposition to the motion for extension of time, AndDone notified the

[3] Judge Fenner presided over this case until an order of recusal was entered on December 2, 2025. The case was transferred to this Court on December 3, 2025.

[4] The Scheduling Order provided: "All pretrial discovery authorized by the Federal Rules of Civil Procedure shall be completed on or before November 21, 2025. This means that all discovery shall be completed, not simply submitted, on the date specified by this paragraph. Accordingly, all discovery requests and depositions shall be submitted and/or scheduled prior to the date specified in this paragraph and shall allow sufficient time for completion within the time specified by the Federal Rules of Civil Procedure, the Local Court Rules, and/or orders of this Court." (Doc. 13 at 1.)

[5] Gaines lived in Kentucky, while AndDone's counsel was located in Kansas City.

Initial Court that Gaines was also refusing to schedule or appear for her deposition, and it requested that the Initial Court order Gaines to appear for a remote deposition. (Doc. 36.) On October 28, 2025, the Initial Court ordered Gaines to respond to AndDone's motion for leave to amend by the original deadline—November 3, 2025—and to provide discovery responses by November 7, 2025. (Doc. 38.) The Initial Court ordered the parties to confer and schedule Gaines' deposition "without delay" and warned Gaines that it would not permit her "to further delay the scheduling of her deposition." (*Id.*)

AndDone continued trying to schedule a date for Gaines' deposition, explaining to her that the deposition would need to be completed with sufficient time for AndDone to pursue discovery motions by the November 7, 2025 deadline, if needed. (Doc. 41 at 4.) Gaines refused. AndDone's counsel followed up on November 4, 2025, again requesting that Gaines provide a date for her deposition. Gaines responded that she would not schedule her deposition until the Initial Court ruled on AndDone's motion for leave to amend. (Doc. 41-1 at 8.)

On November 13, 2025, a discovery dispute teleconference was set for November 20, 2025, at AndDone's request based upon Gaines' deficient written discovery responses and refusal to schedule her deposition. On November 19, 2025, the Initial Court granted AndDone's motion for leave to amend, and AndDone filed its Second Amended Complaint including an alternative breach of contract claim against Reset Financial Group for breach of the Sub-Merchant Agreement described above. (Doc. 55.) Gaines failed to appear for the discovery dispute teleconference on November 20.[6]

On November 21, 2025, AndDone filed a motion requesting an order that Gaines show cause why she should not be sanctioned for violations of Federal Rule of Civil Procedure 11 for misrepresentations to the Initial Court including citations to nonexistent cases and quotations contained in a November 18 filing, (Doc. 53). (Doc. 57.)

[6] Prior to the discovery conference, Gaines requested to stay the case and/or discovery conference multiple times, arguing that she was attempting to reopen a previous bankruptcy proceeding and she was unavailable on November 20. The Initial Court explained that the case would proceed "unless and until [Gaines] proves that the Western District of Kentucky has reopened said bankruptcy case," and declined to reschedule from November 20 because Gaines "had several opportunities to state she was unavailable on that date via email communications between the Court, opposing counsel, and herself," but she never indicated her unavailability or provided alternative dates. (Doc. 47.) The Initial Court cautioned Gaines that she was ordered to appear via video conference on November 20 and that her "absence may result in an order against [her]." (Doc. 58 at 1.)

Also on November 21, 2025, after the Initial Court reviewed AndDone's discovery dispute summary and exhibits, Gaines' written discovery responses, and AndDone's motion to extend the Scheduling Order deadlines based upon Gaines' failure to participate, and argument from counsel, the Initial Court entered an Amended Scheduling Order. The Initial Court cautioned, "Defendant Gaines is expressly cautioned that the following constitute binding orders of the Court. Failure to comply with these orders may result in sanctions including monetary sanctions and/or the entry of default judgment against Defendant. *See* Fed. R. Civ. P. 37(b)(2)(C)." The Initial Court overruled Gaines' objections to AndDone's discovery requests and ordered Gaines to respond by December 5, 2025. The Initial Court noted "that it appears from the record that Defendant Gaines has been obstructive and uncooperative with respect to her discovery obligations, including the scheduling of her deposition," therefore, it ordered Gaines "to appear for her deposition in person at 9 am central on December 18, 2025." (Doc. 58.) The conclusion of discovery was moved to February 27, 2026. The Initial Court also ordered Gaines to show cause why she should not be sanctioned for the Rule 11 violations identified in AndDone's motion for order to show cause by December 12, 2025. (Doc. 59.) Gaines did not provide further written discovery responses as ordered, she did not appear for her deposition, and she did not respond to the Initial Court's show cause order.

AndDone filed a motion for attorney fees pursuant to Rule 37 to recover the attorney fees it incurred by pursuing the Initial Court's November 21, 2025 order compelling Gaines to provide written discovery and appear for her deposition. (Doc. 60.) That motion remains pending.

This matter was reassigned to this Court on December 3, 2025. The Court scheduled a status conference for January 29, 2026. In the meantime, AndDone notified the Court that Reset Financial Group was served with the Second Amended Complaint on December 15, 2025. Neither Reset Financial Group nor Gaines filed an answer to the Second Amended Complaint.

At the January 29, 2026 status conference, AndDone appeared by counsel and Gaines appeared pro se. Reset Financial Group did not have counsel. Gaines acknowledged her understanding that she would need to hire counsel to represent Reset Financial Group. The Court ordered Reset Financial Group to secure counsel and have an entry of appearance on file by March 2, 2026. The Court reiterated to Gaines that all prior orders by the Initial Court still applied and that the February 27, 2026 discovery deadline would not be extended as to the claims against her as an individual. The Court warned Gaines that she was in a "very dire position" due to her obstructiveness and if she did not begin participating in discovery in a significant way, the Court

would have to issue a default judgment against her. Gaines acknowledged that she understood the dire situation she was in.

On February 19, 2026, after several more failed attempts at obtaining a favorable deposition date for Gaines, AndDone filed a unilateral notice of deposition to conduct Gaines' deposition in-person on February 25, 2026, in Kansas City, Missouri. (Doc. 71.) On February 24, 2026, at approximately 3:40 p.m., (the eve before that deposition), Gaines filed an "emergency" motion for protective order, requesting that the Court continue her deposition "for a reasonable time to allow [Gaines] to retain counsel" or that the Court allow the deposition to be "conducted remotely by videoconference" due to her Kentucky residence and financial hardship. (Doc. 72.) In response, AndDone explained that despite multiple orders, Gaines continued refusing to schedule her deposition or provide any written discovery responses or documents. (Doc. 74.) AndDone explained that it had repeatedly requested that it receive Gaines' responsive documents and interrogatory responses seven days before her deposition so that it could prepare for the deposition. In ruling on Gaines' motion for protective order, the Court explained that it found Gaines' request to conduct her deposition remotely (rather than in person in Kansas City) to be reasonable. Accordingly, the Court ordered that Gaines provide full and complete discovery responses by February 27, 2026, and that Gaines appear for a remote deposition between March 6 and 13, 2026. (Doc. 75.) Gaines did not produce any documents or appear for her deposition as ordered by the Court.

In the Second Amended Complaint, AndDone alleges one breach of contract claim against Gaines arising from her breach of the Sub-Merchant Agreement. (Doc. 55 at ¶¶ 49-54.) Alternatively, AndDone alleges unjust enrichment and negligence claims against Gaines (Counts 2 and 3, respectively) and an alternative breach of contract claim against Reset Financial Group. (*Id.* at ¶¶ 55-74.) AndDone seeks recovery of $88,506 from the chargebacks plus pre-judgment interest provided for in the Sub-Merchant Agreement, post-judgment interest at the statutorily prescribed rates, and AndDone's reasonable attorney fees and costs. (Doc. 55 at 10.)

## Discussion

### I. Default Judgment

AndDone moves for default judgment against (1) Gaines pursuant to Rule 37(b)(2)(A)(vi) for her repeated refusal to provide basic discovery despite three orders to do so, (Docs. 76, 81 at 6-8), and (2) Reset Financial Group pursuant to Rule 55(b)(2) for its failure to plead or otherwise defend, (Doc. 81). The Court begins with AndDone's motion for default judgment against Gaines.

Where a party "fails to obey an order to provide or permit discovery" the Court may issue certain sanctions, including "rendering a default judgment against the disobedient party." Rule 37(b)(2). "[H]owever, dismissal may be considered as a sanction only if there is: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party." *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000). A violation is "willful" if the offending party "acted intentionally as opposed to accidentally or involuntarily." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000). "A finding of 'prejudice' under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim." *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003). "Courts have found willfulness and bad faith in cases in which a party has repeatedly engaged in discovery abuses." *United States v. Yennie*, 585 F. Supp. 3d 1194, 1199 (D. Minn. 2022) (collecting Eighth Circuit decisions affirming default judgment sanctions).

Between the Initial Court and this Court, three orders were entered which in no uncertain terms directed Gaines to provide full and complete discovery responses and to schedule and/or appear for her deposition. (*See* Doc. 38 (October 28, 2025), Doc. 58 (November 21, 2025), Doc. 75 (February 26, 2026).)

Gaines disobeyed all three orders—she has never provided full and complete discovery responses or appeared for her deposition. Gaines filed an opposition to AndDone's motion for default judgment against her on June 10, 2026 (almost three months after her response was due). In her response, she argues that she disobeyed the three orders that she participate in discovery because of "confusion" and "unresolved bankruptcy issues." (Doc. 82.) Gaines has repeatedly raised her attempts to reopen her bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Kentucky[7] ("Bankruptcy Court") as a reason why she should not have to

[7] Gaines filed a Chapter 7 bankruptcy case on August 13, 2024. (Doc. 53-3.) The case was determined to be a "no asset" case. On November 13, 2024, Gaines received her discharge and the case

participate in discovery. However, the Initial Court twice explained to Gaines that discovery would proceed "unless and until [Gaines] proves that the Western District of Kentucky has reopened said bankruptcy case." (Docs. 46, 47.) The Initial Court denied Gaines' request to stay proceedings based upon her motion to reopen the bankruptcy case. (Doc. 47.) And, since those orders, on November 18, 2025, the Bankruptcy Court denied Gaines' motion to reopen the bankruptcy proceeding.[8] (Doc. 53-3.) Yet, Gaines still refused to participate in discovery or appear for her deposition.

The Court finds that Gaines' failure to provide complete discovery responses and appear for her deposition was clearly willful. Gaines' refusal to participate in discovery has continued for over nine months and in the face of three separate court orders. Gaines has been repeatedly admonished, and she has acknowledged that she understood the dire circumstances she faced if she continued to disobey court orders. Both the Initial Court and this Court warned Gaines that she faced imminent risk of a default judgment against her pursuant to Rule 37 if her refusal to participate in discovery continued. (Docs. 58, 69.) Yet, Gaines continued to categorically refuse to abide by the Court's order. *Cf. Everyday Learning Corp. v. Larsen*, 242 F.3d 815, 818 (8th Cir. 2001) (concluding that default judgment sanction was appropriate where defendant's "discovery abuses continued unabated" after a detailed discovery order and the "abuses went to the core of the trial preparation process," including refusing to appear to a deposition and delays in production of documents); *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (concluding that defendants' conduct which included "complete failure to engage in discovery and failure to appear at depositions and hearings set by the court" provided "ample basis for a grant of default judgment").

Finally, AndDone has suffered prejudice. Gaines began resisting AndDone's discovery efforts in October 2025, and by November 2025, she began outright refusing to participate. Gaines

was closed. Almost a year later, on November 12, 2025, Gaines filed a motion to reopen the bankruptcy case so she could file an amendment adding AndDone as a creditor.

[8] Gaines incorrectly and improperly represented to the Initial Court that the Bankruptcy Court expressly held "that AndDone LLC's claim 'is discharged, whether the debt was listed in the schedules or not,' because this was a no-asset Chapter 7." (Doc. 53 at 1-2 (emphasis in original).) The Bankruptcy Court did not so hold—instead, it explained that it was unnecessary to reopen the bankruptcy proceeding because "[i]f a debt was owed by the debtor, arose prior to the filing of the bankruptcy petition, and was a dischargeable debt and not of the kind that are excepted from discharge under 11 U.S.C. § 523, the schedules do not need to be amended to add the debt." (Doc. 53-3 at 1-2.) The Bankruptcy Court did not mention AndDone, nor did it make any rulings on the purported dischargeability of Gaines' (then alleged) debt.

has now refused to participate in discovery for nine months, leaving AndDone with scant options to obtain the relief it seeks. It cannot move forward when Gaines refuses to respond or participate in discovery.

In the Eighth Circuit, "before dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith." *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (internal quotation marks omitted); *but see Everyday Learning*, 242 F.3d at 817-18 ("When the facts show willfulness *and* bad faith, . . . the district court need not investigate the propriety of a less extreme sanction." (emphasis added)). Even without this finding that Gaines' refusal was intentional; however, it has become apparent to this Court that further warnings and lesser sanctions would not cure her conduct such that this litigation could proceed in a just, speedy, and orderly fashion. Gaines has not filed an answer to the operative pleading, and she has provided scant written discovery, meaning an order prohibiting her from supporting a defense or striking pleadings, or an order that facts be taken as established, would not effectively remedy AndDone's prejudice. *See also KC Ravens, LLC v. Micah Energy Corp.*, No. 4:13-00870-CV-DGK, 2014 WL 12623661, at *1 (W.D. Mo. Dec. 19, 2014) ("The Court also finds that while a lesser sanction, such as ordering a fine, is theoretically available, it is not appropriate because [the defendant] is unlikely to pay any fine, and imposing a fine would not remedy the prejudice to [the plaintiff] by correcting the delay it has experienced in this case."). Accordingly, Gaines' conduct warrants a default judgment sanction.

When a defendant is in default, the Court accepts as true all of the factual allegations in the complaint except those relating to the amount of damages and determines whether the unchallenged facts constitute a legitimate cause of action. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (vacating Rule 55 default judgment because allegations in complaint were insufficient to state a claim); *see also Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1382-83 (11th Cir. 2024) (applying to Rule 37(b)(2)(A)(vi) defaults); *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 Fed. App'x 928, 933-34 (6th Cir. 2020) (same); *United States v. Norwood*, 812 Fed. App'x 365, 370 (7th Cir. 2020) (same); *S.E.C. v. Razmilovic*, 738 F.3d 14, 33 (2d Cir. 2013) (same). To enter default judgment in favor of AndDone against Gaines in this case, then, the Court must be satisfied that, accepting as true all well-pleaded facts in AndDone's Second Amended Complaint, AndDone has asserted a legitimate cause of action for breach of contract.

Under Missouri law, to prevail on a breach of contract claim, a plaintiff must show: (1) the existence of a contract; (2) that AndDone performed its duties under the contract; (3) that Defendant breached the contract; and (4) AndDone incurred damages as a result. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014).

The Court finds that AndDone has demonstrated that it entered into a valid contract with Gaines (the Sub-Merchant Agreement) under which AndDone provided payment processing services to Gaines. However, Gaines breached the Sub-Merchant Agreement when she (1) used Nola Foster's account to pay $78,203 and $10,303 to herself via her AndDone portal (the payments were not for goods or services provided by Gaines); (2) disbursed the funds to her Navy Federal Credit Union thereby leaving her account with insufficient funds to meet her obligations; and (3) after the $78,203 and $10,303 debits were reported as unauthorized transactions from Nola Foster's account, the $88,506 was clawed back from AndDone's operating account due to Gaines' account having insufficient funds (i.e., the chargebacks) and Gaines refused to reimburse AndDone for the chargebacks. (Doc. 55 at ¶¶ 24-35.) Therefore, AndDone's motion for entry of default judgment pursuant to Rule 37(b)(2)(A)(vi) is **GRANTED**.

The remainder of AndDone's claims (unjust enrichment and negligence against Gaines (Counts 2 and 3) and breach of contract against Reset Financial Group (Count 4) were plead in the alternative. Because the Court enters default judgment against Gaines in favor of AndDone on its primary breach of contract claim, the Court **DENIES as moot** AndDone's motions for default judgment as to its alternative claims against Gaines and Reset Financial Group.[9]

[9] The Court notes that to the extent that it did reach the issue of Reset Financial Group's liability on the breach of contract claim, the record is insufficient for the Court to find that Reset Financial Group was a party to the Sub-Merchant Agreement. AndDone argues only that it alternatively pled that Reset Financial Group was the counterparty to the Sub-Merchant Agreement to the extent that the Court concluded that Gaines was not personally liable as the counterparty, and that due to Gaines and Reset Financial Group's failure to participate in discovery, AndDone was precluded "from finally resolving this issue." (Doc. 81 at 6.) On the record available to the Court, the Sub-Merchant Agreement reflects that Gaines signed the contract on April 11, 2024, in her personal capacity with no reference to Reset Financial Group. (*See* Doc. 55-1 at 21.)

## II. Damages and Interest

What remains is damages—AndDone "must still prove its actual damages to a reasonable degree of certainty." *Everyday Learning*, 242 F.3d at 818-19. A hearing is not necessary. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008) (hearing not necessary if there is sufficient evidence to support default judgment). AndDone has submitted supporting documentation for its calculation of damages sufficient for the Court to determine that AndDone is entitled to recover $88,506 for the chargebacks. (*See* Doc. 88-1 at ¶¶ 5, 12.)

AndDone also request pre- and post-judgment interest. AndDone is entitled to pre-judgment interest on the chargebacks pursuant to the Sub-Merchant Agreement. *See Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 735 F.3d 993, 1004 (8th Cir. 2013) (state law governs the question of prejudgment interest in diversity actions); *Karr v. Kansas City Life Ins. Co.*, 702 S.W.3d 1, 45 (Mo. Ct. App. 2024) (internal citation omitted) ("Judgments do not bear interest either as a matter of legal right or under the common law . . . [a]ny allowance of interest, therefore, must be based upon either a statute or a contract, either express or implied."). Under section 16 of the Sub-Merchant Agreement, the unreimbursed chargebacks are subject to interest at 1% per month ($15,450.96 for interest accrued between December 16, 2024, (the date AndDone demanded reimbursement) and May 31, 2026, plus $29.09 every day beyond May 31 until judgment is entered). (Doc. 55-1 at ¶ 16; Doc. 81-1 at ¶ 12.)

In addition, AndDone is also entitled to post-judgment interest. Federal law governs the availability of post-judgment interest. *See Vanicek v. Kratt*, 772 F. Supp. 3d 1055, 1063 n.1 (D. Neb. 2025); *Travelers Prop. Cas. Ins. Co. of Am.*, 735 F.3d at 1007. 28 U.S.C. § 1961(a) provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court." Post-judgment interest awarded under § 1961(a) is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." AndDone is entitled to post-judgment interest at the statutory rate.

## III. Attorney Fees

In its motion for default judgment against Gaines, AndDone also seeks $53,324.90 in attorney fees and costs incurred since the inception of its lawsuit, asserting that the Sub-Merchant Agreement provides for recovery of its attorney fees and costs for the entirety of the litigation. (Doc. 81 at 8.)

In a diversity action, state law dictates the availability of attorney fees, absent any conflicting federal statute or rule. *Weitz Co. v. MH Washington*, 631 F.3d 510, 528-29 (8th Cir. 2011). Missouri follows the American Rule, "which provides that each party to litigation must pay its own litigation expenses unless a statute specifically authorizes recovery of [attorney] fees or a contract provides for them." *Monarch Fire Prot. Dist. of St. Louis Cnty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 637 (8th Cir. 2011).

AndDone does not address Missouri law (or any law) to support its request of attorney fees. The Court is unaware of any Missouri statute specifically authorizing the attorney fees requested by AndDone. Therefore, in order to recover attorney fees, the contract must provide for them.

AndDone cites to a portion of the indemnification provision of the Sub-Merchant Agreement which provides:

> ***[Gaines] shall indemnify, defend, and hold harmless AndDone . . . from and against all proceedings, claims, losses, damages, demands, liabilities and expenses whatsoever, including all reasonable legal and accounting fees and expenses and all reasonable collection costs, incurred by AndDone . . . resulting from or arising out of the Services in this Agreement***, [Gaines'] processing activities, the business of [Gaines] or its customers, any sales transaction acquired by AndDone, any noncompliance with the Operating Regulations (or any rules or regulations promulgated by or in conjunction with the Associations) by [Gaines] or its agent . . . , any Data Incident, any infiltration, hack, breach, or violation of the processing system of [Gaines], . . . or any other third party processor or system, ***or by reason of any breach or nonperformance of any provision of this Agreement on the part of [Gaines].***

(Doc. 55-1 at ¶ 17(ii) (emphasis added).)

Because "an indemnity clause ordinarily envisions third-party claims," the clause must contain "express language referencing litigation between contracting parties" in order for the prevailing party to recover attorney fees incurred in an action where it has asserted its rights under the contract. *Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 764 (8th Cir. 2022); *see also Monarch*, 644 F.3d at 637 ("Absent language expressly requiring the payment of [attorney] fees incurred in litigation between the parties, the non-drafting party may be unaware that by agreeing to cover the drafting party's [attorney] fees arising from a claim for indemnity, it is actually assenting to cover [attorney] fees the other party incurs in suing for breach of the agreement.").

The indemnity clause here does not contain express language referring to the recovery of attorney fees incurred in litigation between AndDone and Gaines. It is very similar to the indemnity considered in *Monarch*, which the district court and the Eighth Circuit found insufficient

to entitle the plaintiff to attorney fees it incurred in a lawsuit asserting its rights under the contract. 644 F.3d at 637-37 ("[Defendant] will indemnify and hold harmless [plaintiff] . . . from and against any claim, cause of action, liability, damage, cost or expense, including [attorney] fees and court or proceeding costs, arising out of or in connection with . . . any [] breach of the terms of [the contract] by [the defendant].")

The Court is sensitive to AndDone's point that Gaines has been obstructive throughout litigation. However, Gaines' obstructiveness does not justify awarding AndDone's attorney fees for its entire involvement in this case. *See KC Ravens, LLC*, 2014 WL 12623661, at *2 ("Entering default will remedy the prejudice caused by [the defendant's] obstructionism by moving the litigation to the next phase—determining damages—without forcing [the plaintiff] to litigate liability."). Because the Sub-Merchant Agreement does not provide for attorney fees incurred in this action, AndDone would not otherwise be entitled to attorney fees for the entirety of this action absent Gaines' obstructiveness. In other words, AndDone would have spent money litigating liability regardless.

However, the Court does find it appropriate to award AndDone attorney fees that it incurred pursuing the Initial Court's November 21, 2025 discovery order pursuant to Rule 37(a)(5). (Doc. 60.)

Rule 37(a) provides for the various reasons a party may move for an order compelling disclosure or discovery and the manner in which it should proceed. When a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including [attorney] fees" unless one of three exceptions apply—i.e., "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

The Initial Court granted AndDone's request for an order (1) compelling Gaines' discovery responses (to the sole interrogatory and requests for production one through five) and (2) directing Gaines to appear for her deposition. (*See* Docs. 41, 45, 58.) AndDone requests $6,200 in attorney fees for time spent attempting to confer with Gaines, reviewing and responding to Gaines' numerous and dilatory refusals, and preparing its motion. (Doc. 60-3 at 2.) AndDone's request of

$6,200 in attorney fees is reasonable, authorized by Rule 37 and justified by Gaines' unwarranted failure to participate in and provide full and complete discovery responses and schedule her deposition. Accordingly, AndDone's motion for attorney fees, (Doc. 60), is **GRANTED** and AndDone is awarded $6,200 in attorney fees pursuant to Rule 37.[10]

[remainder of page left intentionally blank]

[10] The Court notes that Rule 37(b)(2)(C) also makes available attorney fees caused by a party's failure to obey an order to provide or permit discovery "unless the failure was substantially justified or other circumstances make an award of expenses unjust." However, AndDone's request for the full amount of its attorney fees incurred since the inception of this case ($53,324.90) was not made pursuant to Rule 37(b)(2)(C); instead, AndDone relied solely on its purported contractual right to attorney fees in the indemnity provision.

To the extent that AndDone's request for attorney fees in its motion for default judgment could be construed as being brought pursuant to Rule 37(b)(2)(C), that request is **DENIED without prejudice**. Any further motion for attorney fees associated with Gaines' failure to comply with discovery orders should account for the Court's conclusion that the Sub-Merchant Agreement did not provide for recovery of attorney fees. Thus, any attorney fees requested pursuant to Rule 37(b)(2)(C) should heed the Court's conclusion and Rule 37(b)(2)(C)'s carve out for "other circumstances [which] make an award of expenses unjust." *See KC Ravens, LLC*, 2014 WL 12623661, at *2 (By entering default, the district court remedied the prejudice caused by the defendant's "obstructionism by moving the litigation to the next phase" which ultimately saved the plaintiff "money it would have spent on attorney[] fees litigating liability.").

## Conclusion

After careful consideration and for the reasons explained above, the Court **ORDERS** that:

(1) AndDone's motion for default judgment as to its breach of contract claim against Gaines, (Doc. 76; Doc. 81 at 6-8), is **GRANTED** and the Court enters default judgment against Gaines;

(2) AndDone's motions for default judgment as to its alternative claims against Gaines and Reset Financial Group, (Doc. 76 at 10; Doc. 81), are **DENIED as moot**;

(3) AndDone's request for the full amount of its attorney fees pursuant to the Sub-Merchant Agreement, (Doc. 81 at 8), is **DENIED**;

(4) AndDone's motion for attorney fees pursuant to Rule 37 in the amount of $6,200, (Doc. 60), is **GRANTED**; and

(4) AndDone is awarded the following damages against Gaines:

(a) $88,506 in compensatory damages;

(b) pre-judgment interest in the amount of $17,923.61, as set forth in the Sub-Merchant Agreement;

(c) attorney fees in the amount of $6,200; and

(d) post-judgment interest on the sum of the foregoing ($112,629.61) pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 25, 2026